SHAFER ET AL. *v.* BULL, ET AL.

[No. 76, September Term, 1963.]

70

*Decided November 14, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Thomas G. Andrew* and *Stanford Hoff,* with whom were *Sponseller & Hoff, Walsh & Fisher,* and *Rollins, Smalkin, Weston & Andrew* on the brief, for Shafer Brothers, part of appellants.

*William B. Dulany,* with whom were *Theodore F. Brown* and *Brown & Weant* on the brief, for John Charles Elseroad, other appellant.

*Ralph G. Hoffman,* with whom were *Ginsberg & Ginsberg* and *Hyman Ginsberg* on the brief for appellees.

SYBERT, J., delivered the opinion of the Court.

William Samuel Bull filed suit against Shafer Brothers, a partnership, and the individual members of the firm and their wives (hereinafter collectively referred to as "Shafer Brothers"), and John Charles Elseroad, to recover for personal injuries sustained on the premises of Shafer Brothers. At the same time William Stanley Bull, his father, filed suit against the same defendants to recover for damages to his truck, which was being used by the son when he was injured. The father died before trial and Goldie Belle Bull, administratrix of his estate, was substituted as plaintiff. The cases were tried together and the jury awarded the son $30,000 as damages against Shafer Brothers and Elseroad, and $300 to Goldie Bull, as administratrix of the father, against the same defendants. The latter appealed from both judgments, the two appeals being in the one record now before us.

The appellants, Shafer Brothers, are engaged in buying, selling and storing grain at their place of business in Carroll County. In connection with their business they maintain an electrically operated hoist or lift which is used to raise the front end of a customer's loaded truck and thus permit grain to flow from the rear of the truck into a bin or hopper. The lift is operated by a lever attached to a nearby post. By holding the lever in an upward position, the operator causes the front of the truck to rise slowly. To lower the truck, the lever is pushed downward. When released, the lever automatically re-

turns to a central or neutral position, thereby stopping the ascent or descent of the lift.

On August 2, 1958 William Samuel Bull brought a truckload of grain in his father's 2½ ton truck to Shafer Brothers' elevator. When it became his turn to unload, Bull drove the truck into the lift in the customary manner, alighted, and removed the tail gate. Lewis M. Shafer, Jr., one of the partners in the firm, who was then operating the lift, elevated the front of the truck and the grain poured off into a bin. While the unloading was in progress, Shafer left and went about his duties elsewhere. However, the truck had not been raised high enough to dump all of the grain, so Bull climbed into the bed of the truck to sweep out the remainder with a broom provided by Shafer Brothers, which had been standing nearby. Appellant Elseroad, who was waiting to unload his truck, noticing that all of Bull's grain had not come off the truck, pushed upward on the lift control lever, causing the front end of Bull's truck to rise. Although Bull testified that he had no warning and did not see Elseroad touch the lever, having already begun to sweep out the grain, Elseroad testified that when he began to operate the lift, he called out to Bull and that the latter looked directly at him. For some unexplained reason Elseroad continued to hold the lever in an upward position until the hoist went so high that Bull's truck kicked off of the lift and fell. In the fall Bull received severe personal injuries, and the truck was so damaged that it proved to be a total loss.

Bull testified that he had delivered grain to Shafer Brothers' elevator between thirty and forty times a year during the preceding five years. He stated that on all of his prior visits the hoist had been operated by one of the partners and that he "never touched it". He denied knowledge of any practice of Shafer Brothers to allow various customers to operate the lift. On the other hand, Lindsay Shafer, one of the partners, testified that it was their custom and practice to allow their customers to assist with the unloading of trucks, and to operate the lever which controlled the lift. He said, "[w]e'd never get done if we didn't", as they unloaded from 100 to 150 trucks a day when they were busy, without having any hired help. He also stated that actually only one of the three brothers who operate the elevator is

around to see to the unloading, weighing and sampling of the grain, as the other two would be working elsewhere on their farm, and that only a partner is permitted to attend to the weighing and sampling. He admitted that the lever was not enclosed, that there was no sign posted to give instructions as to how to use it, and that the firm did not have anyone in charge of it. Lewis Shafer testified that it was their general practice to allow anyone who knew how to do so to operate the lift. The testimony of the Shafer brothers was supported by that of various farmers who testified that when they had taken grain to the elevator they had operated the lift themselves, and had seen persons other than the partners use the lever to raise and lower trucks.

The only questions presented by this appeal deal with the instructions which were given to the jury, and prayers which allegedly were refused improperly. Shafer Brothers raise two contentions: first, that it was error to instruct the jury that if Shafer Brothers permitted persons about whom no inquiry had been made as to ability, knowledge or qualifications to operate the hoist and in keeping with that custom had allowed Elseroad to operate the lift, and he had done so in a negligent manner, then the appellees were entitled to recover against Shafer Brothers; and second, that it was error to fail to submit to the jury the questions of appellee Bull's contributory negligence and assumption of risk. The instruction to which Shafer Brothers object in their first contention was in substance the appellees' third prayer which had been granted by the trial judge. Shafer Brothers, in their fourth request for instructions, had asked the lower court to grant an instruction specifically dealing with contributory negligence, so that their second contention is actually that the trial court improperly refused to grant their fourth requested instruction. With respect to assumption of risk by the appellee, we find that the record does not reveal that the appellants requested an instruction on that theory, nor that they objected to its omission from the charge, and hence this question is not properly before us and will not be considered. Maryland Rule 885.

Shafer Brothers objected to the granting of the appellee Bull's third prayer, the first contention above, on the basis that "there

74

is no evidence in this case that the mechanism required any other ability, knowledge or qualification than would be expected from the people who would normally be expected to use the lift."

After considering all of the evidence presented, we are of the opinion that this instruction was properly submitted to the jury. The contention now made that no particular ability was needed to operate the hoist is inconsistent with the testimony given by the partners in the firm. Two Shafer brothers testified that they gave instructions to persons who asked how to operate the lift and that it was their general practice only to allow those persons to work the lift who knew how it was operated. In addition, the hoist would appear to be an inherently dangerous machine. The motor which operated the hoist was powerful enough to raise the loaded trucks well beyond the point of safety, yet there was no safety device to stop the hoist automatically before it got to a dangerous height. The lever was exposed so that any unqualified person, even a stranger, could have operated it. No one guarded it, and there were no cautionary or instructional signs. Thus the evidence was sufficient to show that special knowledge was needed to operate the hoist correctly and safely, and therefore the instruction was properly given to the jury.

Furthermore, there was another theory, which the instructions as a whole submitted to the jury, under which Shafer Brothers could have been held liable. By the course of conduct described in the testimony of the partners, they at least impliedly, if not expressly, invited Elseroad to operate the hoist, and at the same time invited Bull to rely on Elseroad's operation. By their practice of allowing Elseroad and others to operate the lift, and relying upon such assistance rather than providing a competent operator, Shafer Brothers in legal effect appointed Elseroad as their agent for this purpose. An agency relationship need not depend upon an express appointment or agreement, but may be inferred from the words and conduct of the parties under the circumstances of the particular case, the ultimate question being one of intention. *Ramsburg v. Sykes,* 221 Md. 438, 442, 158 A. 2d 106 (1960) ; *Abuc Trading, etc. Corp. v. Jennings,* 151 Md. 392, 135 Atl. 166 (1926). A prin-

cipal "is liable civilly for the tortious acts of his agent which are done within the course and scope of the agent's employment". 3 Am. Jur. 2d, *Agency,* Sec. 267. The negligent act of Elseroad was committed while he was acting as Shafer Brothers' agent, and as it was within the scope of his authorization, and in furtherance of the business of Shafer Brothers, the latter would be liable for Elseroad's negligent act under the doctrine of *respondeat superior.* See Restatement 2d, *Agency,* Sec. 213 (particularly Comments c, d, f and g), and Sec. 225.

The second contention of Shafer Brothers is that it was error to fail to grant their fourth requested instruction dealing with contributory negligence. The only exception made to the denial of this instruction was as follows: "Shafer Brothers further except to the failure of the Court to grant their request for instruction Nos. 3, 4 and 5." The issue thus raised is not properly reviewable. We have held that a reference by a party to an instruction by number, unless accompanied by an objection stating distinctly the portion, or omission, or failure to instruct to which he objects and the specific ground of his objection, is not a sufficient compliance with Rule 554 d, *Belt's Wharf v. Internat. Corp.,* 213 Md. 585, 132 A. 2d 588 (1957). The rule still requires a more informative statement of the ground of the objection than a mere reference to the number of the instruction which the objecting party contends should have been given, notwithstanding the amendment (effective January 1, 1962), of the Rule omitting the word "specific" before the word "ground". Cf. *Merritt v. Darden,* 227 Md. 589, 176 A. 2d 205 (1962).

The appellant Elseroad also raises two contentions: (1) that the trial judge erred in refusing his second requested instruction, which was to the effect that unless the jury found Elseroad was guilty of recklessness in his operation of the hoist, then the verdict should be for Elseroad; and (2) that it was error to fail to instruct the jury on the question of appellee's contributory negligence and assumption of risk.

That portion of the instruction which specifically dealt with the liability of Elseroad was as follows:

> "The Court instructs the jury that if the jury find
> from the evidence in this case that the defendant, John

Charles Elseroad, failed to use due care and caution in the moving of the lever to either raise or lower the truck in which the plaintiff was standing, then if the jury find that as a result thereof, and without any negligence on the part of the plaintiff thereunto contributing, the plaintiff was injured, then the plaintiff is entitled to recover in this case against the said John Charles Elseroad."

We think that it is obvious from this instruction that both issues raised by Elseroad are without merit. As to the first, Elseroad desired an instruction that unless he had been reckless, the verdict must be in his favor. In effect the trial judge so instructed the jury when he said that if they found that Elseroad "failed to use due care and caution" then the verdict should be against him. The instruction simply states in the affirmative the same proposition which Elseroad wished stated in the negative, and thus the lower court did what Elseroad maintained it should have done. His second contention, also, is without adequate basis since the instruction submitted the issue of contributory negligence of Bull to the jury. Furthermore, Elseroad raised no objection to the instructions on this ground at the trial, and therefore the question is not subject to review by this Court. Likewise, he, like Shafer Brothers, neither requested an instruction as to assumption of risk nor objected to its omission from the charge.

*Judgments affirmed; costs to be paid by appellants.*