473 A.2d 1351

**L. Byrd WHALEY et al.**

v.

**MARYLAND STATE BANK.**

**No. 1120, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

April 17, 1984.

John C. Seipp and Raymond S. Smethurst, Jr., Salisbury, with whom were Adkins, Potts & Smethurst, Salisbury, on brief, for appellants.

William G. Duvall, Salisbury, and Edward F. Houff, Baltimore, with whom were Webb, Burnett, Duvall, Jackson & Cornbrooks, Salisbury, and Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, on brief, for appellee.

Argued before GARRITY, BLOOM and BELL, JJ.

BLOOM, Judge.

Maryland State Bank, appellee, obtained a judgment by confession in the Circuit Court for Wicomico County against L. Byrd Whaley and the other seven directors of Delmarva Poultry Cooperative, Inc. (Delmarva), appellants, on October 5, 1979. Appellants' motion to vacate the judgment was granted, and they filed an answer to appellee's declaration. They later filed a counterclaim alleging fraud. The case went to trial and the jury returned verdicts in favor of appellee both on its declaration and on appellants' counterclaim.

Delmarva, as its corporate name implied, was a cooperative comprised of about 120 chicken growers in Delaware's Kent and Sussex Counties and Maryland's Wicomico and Worcester Counties. Members of Delmarva bought shares of stock in proportion to the size of their chicken houses. In addition to the capital generated by the shareholders' investments, Delmarva obtained financing from loans guaranteed by the Farmers Home Administration (FmHA). Basically, an FmHA guarantee covers 90 percent of a loan made by or through a "servicing bank." To obtain such a guaranteed loan, the borrower and the servicing bank must make a joint application to the FmHA. At settlement the borrower signs two notes, one for the guaranteed 90 percent portion of the loan and the other one for the remaining 10 percent of the loan. Typically, the guaranteed portion of the loan is sold to an investor in the "secondary market,"

such as an insurance company or an investment house. The unguaranteed portion, however, is often held by the servicing bank.

The transaction which gave rise to this litigation was Delmarva's second FmHA guaranteed loan. In order to expedite the loan settlement, Delmarva's financial officer, Bert Rumph, suggested that the directors personally execute a note for an amount equal to the unguaranteed 10 percent portion of the loan to Delmarva. This note would then be used as collateral to secure the unguaranteed portion of the loan.[1] Consequently, a meeting of the co-op was scheduled on short notice for the morning of April 26, 1978. This meeting was attended by appellants and by appellee's executive vice-president and chief operating officer, Robert E. Noll. Appellants allege that at this meeting Noll made certain false statements which induced appel-

---

**1.** Apparently, this suggestion was raised partially as a response to the manner in which Delmarva's first FmHA loan in the amount of $2,950,000 was handled. On the first loan, as in the second loan, appellee was the servicing bank. Delmarva and appellee had both assumed that Southern Investors, a secondary market buyer, would purchase both the guaranteed 90 percent portion and the unguaranteed 10 percent portion of the loan. On the morning of the settlement, however, it was learned that Southern Investors was interested only in the guaranteed portion. Appellee, being a relatively small bank, was not able to hold either portion of the loan. Consequently, an intricate financing vehicle was designed to provide security for the unguaranteed 10 percent portion so that it also could be sold. Whaley, Rumph, and Delmarva's general manager, Jim Coleman, formed a partnership, WCR. The WCR partners borrowed $295,000 and signed a promissory note for that amount. They then used those funds to purchase a certificate of deposit. The certificate of deposit, in turn, was sold to Delmarva, which then pledged the certificate as collateral to secure the unguaranteed 10 percent portion of the loan. The unguaranteed portion of the loan, thus secured, was then sold to a secondary investor. When the entire loan was closed, Delmarva took $295,000 from the loan proceeds to pay WCR for the purchase of the certificate. WCR then used those proceeds to discharge the obligation on the promissory note. Several months later, FmHA informed Delmarva that this type of arrangement, in which loan proceeds flowing to Delmarva in effect were used to create security for the 10 percent portion, violated FmHA regulations and could not be used in the future.

lants to sign the promissory note. Specifically, appellants in their brief contend that Noll represented to appellants that there was a "secondary market" for the 10% portion; that he would try to sell it there; that he felt he could sell it in the secondary market but simply had not yet had enough time to work out the details; that he had already talked to specific investors who were interested; that he felt he could sell it in a reasonably short period of time; that the directors' undertaking [obligation on the note] would, accordingly, be temporary; that if he could not sell it, the directors would not be responsible after seven years....

Subsequently, Noll failed to sell the 10 percent portion on the secondary market, Delmarva's already precarious financial situation worsened, and Delmarva ceased operations. In July of 1979 appellee demanded payment on appellants' note; and when nothing was paid, these proceedings began. At trial, the court instructed the jury on appellants' counterclaim for fraud. The court, however, did not give appellants' requested instructions concerning negligent misrepresentation or breach of a confidential relationship. Appellants contend that the court's refusal to give the requested instructions constitutes reversible error.

Appellants' requested instruction on negligent misrepresentation (Prayer No. 11) was based on *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 439 A.2d 534 (1982), in which the Court of Appeals recognized the existence of an actionable tort of negligent misrepresentation independent of the tort of deceit. Appellants' Prayer No. 11 defined "negligent misrepresentation;" distinguished it from fraud, deceit, or intentional misrepresentation; listed all of the essential elements of the tort and contained a statement to the effect that if the jury found all of the elements of the tort to exist it would award appellants "such damages as will compensate them for their actual loss and injury."

Appellants' requested instruction on confidential relationship (Prayer No. 10) defined "confidential relationship,"

described certain circumstances under which the relationship can arise and contained a statement to the effect that if the jury found that such circumstances prevailed between Noll and any of the directors (appellants) then a confidential relationship existed between Noll and any such director.

In noting their exceptions to the court's instructions, appellants said, regarding their tenth and eleventh prayers:

Secondly, we take exception to the lack of instruction on innocent misrepresentation as a complete defense to the bank's action on the note.

Third, we take exception to the failure to instruct on negligent misrepresentation, which we contend is not only a defense to the note, but also a basis for the affirmative claim and recovery of compensatory damages.

*     *     *     *     *     *

Specifically, we except to the court's failure to grant our prayer number ten regarding confidential relationship and also failure to—as I already alluded to, failure to give prayer number eleven regarding fraudulent misrepresentation.

## I.  CONFIDENTIAL RELATIONSHIP

Appellant's exception to the court's failure to give an instruction on confidential relationship was inadequate to preserve that matter for our review.  Maryland Rule 554 is explicit.  Section d requires the party making an objection to any portion of the court's instructions or failure to instruct to state distinctly the portion or omission or failure to instruct to which he objects and for the ground of his objection;  section e provides that upon appeal the party assigning error in the instructions

shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the grounds of objection distinctly stated at the time, and no other errors or

assignments of error in the instructions shall be considered by the appellate court.

■ A mere reference to the number of a requested instruction which the trial court has declined to grant is not a sufficient compliance with section d of the rule to permit review of the instructions. *Jones v. Federal Paper Bd. Co.*, 252 Md. 475, 250 A.2d 653 (1969); *Bauman v. Woodfield*, 244 Md. 207, 223 A.2d 364 (1966); *Shafer v. Bull*, 233 Md. 68, 194 A.2d 788 (1963); *Belt's Wharf v. Internat. Corp.*, 213 Md. 585, 132 A.2d 588 (1957); *Morris v. Peace*, 14 Md.App. 681, 288 A.2d 600 (1972); *Podolski v. Sibley*, 12 Md.App. 642, 280 A.2d 294 (1971).

In *Sergeant Co. v. Pickett*, 283 Md. 284, 286–287, 388 A.2d 543 (1978), however, the Court of Appeals held that an exception to the failure of the trial court "to instruct the jury on plaintiff's requested instruction ... [number] ten, unavoidable [sic] consequences" sufficiently complied with sections d and e of Rule 554. But there the trial judge, by stating that he did not think that particular requested instruction was applicable to the case, clearly indicated that he understood the precise point being asserted and rejected it out of hand. In this case the record does not make clear "that all parties and the court understood the reason for the objection." *Id.* at 288–289, 388 A.2d 543, quoting *Exxon Corp. v. Kelly*, 281 Md. 689, 694 n. 6, 381 A.2d 1146 (1978).

■ In any event, even if the issue had been preserved for our review, we would hold that the refusal to give the requested "confidential relationship" instruction was not reversible error. The prayer as presented may well have constituted a correct statement of the law, but standing alone it is meaningless to the case. To instruct the jury that from a given set of circumstances it might find the existence of a confidential relationship without telling the jury what effect that relationship would have on appellants' defense to the bank's claim or their own counterclaim would give the jury nothing but an abstract principle of law. Appellants' tenth prayer would have had meaning only if

given in conjunction with their rejected fifth prayer, to the effect that punitive damages may be allowed where the wrong involves a breach of duty arising from a relationship of trust or confidence. To support an award of punitive damages, "there must first be an award of at least nominal compensatory damages." *Shell Oil Co. v. Parker*, 265 Md. 631, 644, 291 A.2d 64 (1972). Here, the jury found no liability on the part of the bank. Failure to instruct the jury on punitive damages or on confidential relationship as it relates to punitive damages could not have prejudiced appellants.

## II. NEGLIGENT OR INNOCENT MISREPRESENTATION

Appellants' exceptions to the court's refusal to give their requested instructions on "innocent misrepresentation" and "negligent misrepresentation" were somewhat more explicit than a mere reference to the numbered prayer. The exceptions are not models of clarity or exposition, but we will accept them as adequate to preserve the issues for our review.

Appellants' exceptions treat innocent misrepresentation and negligent misrepresentation as one concept, and their arguments appear to be based on an assumption that their defense to the bank's claim involves exactly the same legal principles as does their counterclaim. They are mistaken.

### A. *Counterclaim*

Appellants were not entitled to any instruction on the law of negligent misrepresentation as a basis for their counterclaim for the simple reason that their counterclaim asserted no claim for damages based on negligent misrepresentation. The counterclaim alleged that "[a]s the direct and proximate result of their reliance on Noll's fraudulent and deceitful representations, [appellants] have sustained damages as hereinafter set forth." The sole cause of action set forth in the counterclaim consisted of appellants' assertions of fraud on the part of appellee. Appellants, however, contend that

one isolated statement in the counterclaim was sufficient to raise negligent misrepresentation as a separate cause of action. In the single count counterclaim, appellants alleged that "Noll knew, or by reason of his position with the Bank *should have known,* that there was no market for the ten percent portion." (emphasis added). In a footnote in their brief, appellants argue that the emphasized portion of that allegation sets forth a claim of negligent rather than fraudulent misrepresentation. Appellants contend that that allegation stated a cause of action based on negligent misrepresentation in addition to their cause of action based on fraud.

That one phrase, however, contained in the single count asserting several specific allegations of fraud, did not adequately set forth a cause of action based upon negligent misrepresentation. "It is a basic requirement of Maryland pleadings that '[s]eparate causes of action shall be contained in separately numbered counts.' Maryland Rule 340c." *Continental Casualty Co. v. Mirabile,* 52 Md.App. 387, 402, 449 A.2d 1176 (1982). Similarly, when a request for affirmative relief is made by means of a counterclaim, "the allegations should as fully state the claim of the defendant against the plaintiff as if the defendant were filing a declaration and instituting a suit against the plaintiff." 2 Poe, *Pleading and Practice,* § 591B (Sachs 6th ed. 1970). Therefore, if they had wished to allege that Noll's statements were negligent misrepresentations, appellants should have made the allegation in a separately numbered count. In addition, in order to allege a cognizable negligent misrepresentation action, appellants would have been required to allege the existence of each of the five elements of the tort,[2] not merely that Noll should have known that there was no market. Thus, the trial court did not err in refusing to instruct the jury on negligent misrepresentation as a basis for an affirmative cause of action.

2. *See Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 439 A.2d 534 (1982).

## B. *Defense*

We turn now to appellants' contention that they were entitled to an instruction on innocent misrepresentation as a complete defense to the bank's action.

■ The Court of Appeals has held that "a false representation of a material fact devoid of intent to deceive will not support an action in deceit at law but a material misrepresentation of fact, though there be no actual moral delinquency, may warrant rescission by a court of equity of a contract induced thereby." *Shulton, Inc. v. Rubin,* 239 Md. 669, 686, 212 A.2d 476 (1965) (citations omitted), *see also, Creamer v. Helferstay,* 294 Md. 107, 116, 448 A.2d 332 (1982). Similarly, a plaintiff's unintentional misrepresentation of material fact may serve as a defense to an action in law for breach of the contract. While the law court "does not have the power actually to rescind the contract, the law court will simply hold it unenforceable and deny relief." *Id.* at 115, 448 A.2d 332 (citation omitted).

■ In the instant case, however, the lower court did not err in refusing to grant appellants' requested instruction entitled "Negligent Misrepresentation." Although a negligent misrepresentation could be a defense in a contract action, it is a defense based on equitable grounds and must be pleaded as such. Md.Rule 342 d 1.

Although a law court in Maryland may not ordinarily grant affirmative equitable relief absent statute or rule, it is competent to recognize defensive pleas on equitable grounds under Maryland Rule 342 d 1. That rule permits any party to an action at law, by way of defense, to plead facts which could entitle him to relief on equitable grounds in a court of equity. If the law court agrees that in equity the contract would be rescinded, although it does not have the power actually to rescind the contract, the law court will simply hold it unenforceable and deny relief.

*Creamer v. Helferstay,* 294 Md. at 114–115, 448 A.2d 332 (citation omitted) (footnote omitted).

■ Here, appellants did not make a special plea on equitable grounds as required by Rule 342 d 1. Therefore, they waived any equitable defenses they may have had.

■ Appellants assert, however, that they were not attempting to defend the suit on equitable grounds. They insist that since their claim for negligent misrepresentation arose out of the same transaction as the suit they were defending, the action to enforce the promissory note, their defense was in the nature of a recoupment and, thus, cognizable under the general issue plea.

The problem with appellants' argument is that their requested instruction was not couched in terms of recoupment or, indeed, in terms of any defense to the note. The requested instruction asked the jury to "award [appellants] such damages as will compensate them for their actual loss and injury."

The rule of the Maryland cases is clear: in an action *ex contractu*, a claim arising out of an independent transaction (set-off) must be pleaded as a counterclaim, but one arising out of the same transaction (recoupment) need not be, and may be proved under the general issue plea, *unless an affirmative judgment (i.e., for an amount in excess of the plaintiff's claim) is sought.*
*Holloway v. Chrysler Credit Corp.*, 251 Md. 65, 66, 246 A.2d 265 (1968) (emphasis added).

The instruction requested by appellants was inconsistent with a theory of recoupment because it was couched in terms of affirmative damages and did not purport to limit the claim for negligent misrepresentation to mere nullification of the bank's recovery.

We hold, therefore, that the refusal to grant appellants' requested instructions on negligent misrepresentation was not error because that requested instruction was not pertinent to any issue raised by the pleadings.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.