710 A.2d 338

**LIBERTY MUTUAL INSURANCE COMPANY, et al.**

**v.**

**BEN LEWIS PLUMBING, HEATING & AIR CONDITIONING, INC., et al.**

**No. 231, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

May 27, 1998.

David F. Albright (C. Thomas Brown, Franklin T. Caudill and Albright, Brown, Goertmiller & Caudill, L.L.C., on the brief), Baltimore, for appellants.

Timothy G. Casey (Matthew M. Moore, on the brief), Rockville, for appellees.

Argued before MURPHY, C.J., and WENNER, J., and RICHARD T. ROMBRO, Judge, Specially Assigned.

RICHARD T. ROMBO, Judge, Specially Assigned.

In the Circuit Court for Montgomery County, Liberty Mutual Insurance Company (Liberty), the appellant, sued Ben Lewis Plumbing, Heating & Air Conditioning, Inc., (Lewis), appellee, for premiums allegedly due on various insurance policies. The policies Lewis had purchased from Liberty included automobile, umbrella excess liability, commercial lines, inland marine and contractor's equipment, and worker's compensation. The premiums that Liberty alleged to be due were for the entire packet of policies for the period July 1, 1984 through September 1, 1989, although the dispute between the parties centers on the 1986 worker's compensation policy.

## THE FACTS

The testimony presented before the trial court and jury disclosed that the terms of the 1984 and 1985 policies [1] provided for Liberty to conduct an audit and issue adjustments based on Lewis's claims experience for the prior year. At the

---

1. All references to policy mean the worker's compensation policy, unless otherwise indicated.

end of policy years 1984/1985, Lewis was credited with payments on the policies because of low losses. Under the terms of the policies for those years, no further adjustments could be made after the original re-determination. According to Lewis, the provision for one adjustment only was an important feature of the policy.

Lewis requested bids for its 1986 worker's compensation insurance. The request for bids was prepared and distributed by Lewis's employee, Sally Fink. Ms. Fink testified that a Liberty representative, Ms. Holly Goodrich, delivered a proposal to her, which included the 1986 worker's compensation policy. At that meeting, Ms. Fink asked whether Liberty's proposal was for the same coverage provided in the prior years. Ms. Goodrich assured her that it was. Ms. Fink testified that she was not told that, under the terms of the 1986 policy, the dividends paid after the first audit could be further adjusted on a second or third audit. Ms. Fink accepted Liberty's offer based upon Ms. Goodrich's representations. Finally, Ms. Fink testified that when she received the actual policy some two to five months after it took effect, she again contacted Ms. Goodrich, asked if there was anything she needed to know about the policy, and was told that there was not.

### *THE POLICY*

The policy delivered to Lewis contained the following Dividend Redetermination Endorsement:

Upon any computation of dividends subsequent to the initial if the redetermined dividend is greater than the dividend previously computed the company shall immediately pay to the insured the additional dividend shown to be due whereas if the redetermined dividend is less than the dividend previously computed the insured shall immediately refund the amount by which the dividends previously computed exceed the redetermined dividend.

On June 30, 1986, Ms. Fink signed a separate one-page letter, entitled "All States Workers' Compensation Retention Divi-

dend Plan Confirmation Letter With Redetermination." This letter contained the same paragraph set out above verbatim (albeit with punctuation).

Liberty kept one running account balance for all of Lewis's policies, which included charges, payments, and credits such as policy dividends. Pursuant to the first audit of the 1986 worker's compensation policy, Liberty credited Lewis with $94,000.00 in dividends. Over the next few years, as further redeterminations were made, Liberty made negative adjustments to these dividends. The adjustments amounted to the entire $94,000.00. Lewis claimed that not until July of 1989 did it realize that these adjustments had been made.

### THE HISTORY OF THE CASE

In February of 1993, Liberty filed a one count complaint for breach of contract. Within a few weeks, Lewis filed an answer containing thirteen numbered defenses. Many legal defenses were grouped under one number, so that the total defenses filed by the defendant were well over twenty. The Answer included the statement: "Defendant generally denies liability pursuant to Rule 2–323(d) as to plaintiff's Complaint." There are no facts contained in the Answer; all of the defenses are listed by their legal titles. Nowhere in the answer is the defense of negligent misrepresentation asserted. The sixth paragraph does list *fraud* as one of the defenses.

Thereafter, Lewis filed a counterclaim against Liberty. Count One contained a demand for reimbursement of payments that Lewis had made to an employee for worker's compensation and that had not been reimbursed by Liberty. Count Two alleged that Liberty was in breach of its contract because it had made second and third redeterminations of premiums due, and had made "retroactive" adjustments. In this count, Lewis demanded $94,080.00 as well as an accounting. Count Three also requested an accounting of all dividend adjustments in order to determine how Liberty had arrived at the amount it had sued for in its complaint. The counterclaim did not assert either fraud or negligent misrepresentation as a basis for the breach of contract.

Liberty answered the counterclaim and filed a motion for summary judgment. In its answer in opposition to that motion, Lewis for the first time tentatively suggested that there was negligent misrepresentation. The answer avers that although Liberty may have made false representations, "... it is not necessary that Ben Lewis Plumbing show that false representations were intentionally made ..." The trial judge, deeming that there were issues of fact to be resolved, denied the plaintiff's motion for summary judgment.

The case came on for trial before a jury. At the conclusion of the testimony, Liberty requested the trial judge to instruct the jury that there was a duty on Lewis to read the policy. That request was declined. The court prepared issues to submit to the jury, four of which dealt with liability and two with damages. The jury found that Lewis was (1) liable to Liberty for the premium, and therefore awarded Liberty $63,725.00; (2) that Liberty was liable to Lewis on Count two (the only remaining count) of the counterclaim, and therefore awarded Lewis $31,909.00; and (3) Lewis had proven negligent misrepresentation by a preponderance of the evidence.

Post trial, on motion of Lewis, the court struck the verdict in favor of Liberty, because the jury had found that there was a negligent misrepresentation. In this court, Liberty complains that the trial judge erred in (1) permitting Lewis to proceed on an "unpleaded" counterclaim for negligent misrepresentation; (2) failing to grant Liberty's motions to dismiss Lewis's counterclaim on the basis of insufficient evidence; (3) submitting to the jury the "non-pleaded" negligent misrepresentation issue; (4) striking the jury verdict in favor of Liberty; and (5) refusing to instruct the jury that Lewis had a duty to read the policy. We shall address each of these questions, but not necessarily in the order that they were argued by Liberty.

### THE COUNTERCLAIM

■ As we have noted, only Count Two of the counterclaim was submitted to the jury. That count alleged that the breach

of contract occurred when Liberty redetermined the premiums on third and subsequent calculations. Liberty contends that under the holding of *Twelve Knotts v. Fireman's Insurance Company*, 87 Md.App. 88, 104, 589 A.2d 105 (1991) there can be no breach of contract and, therefore, this issue should not have been submitted to the jury. In *Twelve Knotts, supra,* this Court quoted from *Shepard v. Keystone Insurance Company*, 743 F.Supp. 429, 432 (D.Md.1990), to the effect that:

It is the obligation of the insured to read and understand the terms of his insurance policy, unless the policy is so constructed that a reasonable man would not attempt to read it .... If the terms of the policy are inconsistent with his desires, he is required to notify the insurer of the inconsistency and of his refusal to accept the condition.

The *Twelve Knotts* Court then pointed out that, though there were no Maryland cases requiring the result that the District Court had reached, nonetheless, it appeared to be the general rule:

[W]hen the insured accepts a policy, he accepts all of its stipulations, provided they are legal and not contrary to public policy. Where changes from the application appear in the delivered contract, under a more stringent doctrine, the insured has a duty to examine it promptly and notify the company immediately of his refusal to accept it. If such policy is accepted or is retained an unreasonable length of time, the insured is presumed to have ratified any changes therein and to have agreed to all of its terms.

*Twelve Knotts,* 87 Md.App. at 104, 589 A.2d 105 (quoting 12, J. Appleman, Insurance Law and Practice, § 7155). The Court then concluded:

We believe this to be a reasonable rule, and we therefore adopt it. Under that rule, it is clear that the breach of contract action must fail. Appellant is a sophisticated business entity having had previous experience purchasing insurance. The offending policy provision is clear and unambiguous. [The insured] and the partners had an oppor-

tunity when the policy was delivered to discover the provision and, if they chose, reject the policy on the ground of non-conformance. Unfortunately, they neglected to do so. By receiving the policy and remaining silent until the end of the policy year, appellant is deemed to have accepted the policy with the non-conforming provision in it.

*Id.* at 104–105, 589 A.2d 105.

Lewis urges that *Twelve Knotts* is not applicable because in that case the policy was delivered to the insured without any assurances having been made, while in this case, the insured asked if the policy was the same, and the insurer said it was. We perceive this to be a distinction without a difference.

■ As in *Twelve Knotts,* the insured is a sophisticated business entity with previous experience in purchasing insurance. It had an employee whose job it was to determine the types of insurance that were needed and put out requests for bids. Lewis had studied the policy and knew the particular coverage that it wanted, specifically that the insurer was limited to only one redetermination. Notwithstanding this, it failed to read the policy to determine whether it had indeed received that coverage. Finally, it did not even read the one-page letter forwarding the policy which contained on its face, in plain language, the fact that the insurer could re-determine the premiums.

Even without the hurdle of the holding in *Twelve Knotts,* Lewis's counterclaim must fail. The specific breach alleged by Lewis in Count Two of the counterclaim was:

The first calculation will be final if all cases are closed. All open cases of the first calculation will be increased by twenty-five percent (25%) to determine the dividend. All open cases of the second calculation will be increased by ten percent (10%) to determine the dividend. The third calculation will be considered final, open cases will not be increased for this calculation. In addition, adverse lost development on the second and third adjustment will not reduce any dividend previously paid to Ben Lewis, Inc.

The policy delivered to Lewis does not contain this provision. Lewis claims, however, that it is part of the oral agreement entered into with Liberty Mutual.

■ Given the existence of the written policy, the court should not have allowed Lewis to proceed on its counterclaim. It is well-established in Maryland that absent a showing of fraud, duress or mistake, when two parties have a written contract that is clear and unambiguous, that contract is presumed to express the intent of the parties, and "parol evidence is not admissible . . . to vary, alter or contradict the terms of that contract." *GMAC v. Daniels,* 303 Md. 254, 261–62, 492 A.2d 1306 (1985). Here, the written policy, as a whole, is clear and unambiguous, and expressly states that "the only agreements relating to this insurance are stated in this policy." Further, in light of Lewis's legal obligation to read the policy, there was clearly no fraud in the inducement of the contract. Thus, unless Lewis had a right to have its negligent misrepresentation claim submitted to the jury, judgment should have been entered in favor of Liberty on the second count of the counterclaim.

## THE NON–PLEADED DEFENSE

As we have pointed out, the first mention of negligent misrepresentation by the appellee came in its answer to appellant's motion for summary judgment. In that response, the appellee alleged fraud or "at the least that Liberty Mutual made a false representation of a material fact."

The Court of Appeals recently explained to the bench and bar that even though Maryland had long since abandoned the technical requirements of common law pleading, those requirements remain important elements in the process of bringing a case to trial. Although it is unlikely that a pleader today will be non-suited for failure to comply with the technical minutiae of pleading certain facts, the pleading requirement cannot be dispensed with altogether. The Court of Appeals noted that pleading serves four important purposes:

1. it provides notice to the parties as to the nature of the claim or defense;

2. it states the facts upon which the claim or defense allegedly exists;

3. it defines the boundaries of litigation, and

4. provides for the speedy resolution of frivolous claims and defenses.

*Scott v. Jenkins,* 345 Md. 21, 27–28, 690 A.2d 1000 (1997). The court then stated: "Of these four, notice is paramount." *Id.* at 28, 690 A.2d 1000.

█ In that case a police officer was sued for assault, and damages were claimed in the amount of $500,000.00. At the conclusion of the trial, the plaintiff requested that the judge instruct the jury on punitive damages, though none had been pleaded nor asked for in the ad damnum. The trial court did so instruct, and the jury returned a verdict that awarded both compensatory and punitive damages. This Court affirmed the judgment. *Scott v. Jenkins,* 107 Md.App. 440, 668, A.2d 958 (1995). The Court of Appeals reversed. In doing so, the Court observed that "a punitive damage award based upon an insufficiently pleaded complaint may render the judgment constitutionally infirm." 345 Md. at 35, 690 A.2d 1000. An important basis for the Court's opinion was its due process concern that fair notice be given in the pleadings. In *Early v. Early,* 338 Md. 639, 659 A.2d 1334 (1995), the Court of Appeals held a "[court] has no authority, discretionary or otherwise, to rule upon a question not raised by the pleadings, and of which the parties therefore had neither notice nor an opportunity to be heard." *Id.* at 658, 659 A.2d 1334. (Citation omitted). This Court in *Gatuso v. Gatuso,* 16 Md.App. 632, 633, 299 A.2d 113 (1973), held that support not requested by a party in her complaint could not be obtained by that party. Once again, the due process rationale was the primary reason underpinning the Court's ruling. These cases clearly indicate that both this Court and the Court of Appeals require that a claim or defense be asserted with sufficient particularity to

put the opposing party on fair notice of both the basis of the claim and the relief sought.

The problem for the pleader results from the wording of Maryland Rule 2–323. Section (a) provides:

A claim for relief is brought to issue by filing an answer. *Every defense* of law or fact to a claim for relief in a complaint, counter-claim, cross-claim or third-party claim shall be asserted in an answer, except as provided by Rule 2–322 ... The answer shall be stated in short and plain terms and shall contain the following: (*l*) The defenses permitted by Rule 2–322(b) that have not been raised by motion, (2) answers to the averments of the claim for relief pursuant to section (c) or (d) of this Rule, and (3) the defenses enumerated in sections (f) and (g) of this Rule. (Emphasis supplied).

Section (g) of the same Rule provides that a party shall set forth by separate defenses:

(*l*) accord and satisfaction, (2) merger of a claim by arbitration into an award, (3) assumption of risk, (4) discharge in bankruptcy or insolvency from the plaintiff's claim, (5) collateral estoppel as a defense to a claim, (6) contributory negligence, (7) duress, (8) estoppel, (9) fraud, (10) the legality, (11) laches, (12) payment, (13) release, (14) res judicata, (15) statute of frauds, (16) statute of limitations, (17) ultra vires, (18) usury, (19) waiver, (20) privilege and (21) total or partial charitable immunity.

While section (a) of Rule 2–323 requires that *every* defense of law or fact shall be asserted in an answer, section (g) sets forth twenty-one listed defenses that are *required* to be specially pleaded.[2]

---

**2.** This dissimilarity has been noted by the commentators. Niemeyer and Schuett in Maryland Rules Commentary stress the language of Rule 2–323(g), and suggest that "[Any] defense not included on the list need *not* be raised in the answer to be preserved." Niemeyer and Schuett, *Maryland Rules Commentary*, p. 197 (1992). (Emphasis in original). Notwithstanding that statement they note the ambiguity caused by subsection (a) and conclude by stating: "Good pleading mandates that all known defenses be stated, even though the Rule specifies that only

■   The Maryland rule tracks the Federal rule, although there is a substantial distinction.   Federal Rule of Civil Procedure 8(c) provides:

> (c) Affirmative Defenses.  In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge of bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and *any other matter constituting an avoidance or affirmative defense.*  When a party has mistakenly designated a defense as a counterclaim, or a counter-claim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.  [emphasis supplied.]

The Federal rule requires that all affirmative defenses be set forth in the answer.   The Federal courts, therefore, as a general rule, have held that a failure to plead an affirmative defense estops a party from asserting that defense at trial. See *Brannan v. United Student Aid Funds,* 94 F.3d 1260 (9th Cir.1996); *McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498 (1st Cir.1996); *Bentley v. Cleveland County Board of Commissioners,* 41 F.3d 600 (10th Cir.1994).   See also 5 Wright & Miller, Federal Practice and Procedure, § 1278 (1990).   The justice of a rule precluding the defendant's reliance on an affirmative defense that was not specifically pleaded is apparent.   "An affirmative defense is one which directly or implicitly concedes the basic position of the opposing party, but which asserts that notwithstanding that concession the opponent is not entitled to prevail because he is precluded for some other reason." *Armstrong v. Johnson Motor Lines, Inc.,* 12 Md. App. 492, 500, 280 A.2d 24, *cert. denied,* 263 Md. 709 (1971).

---

the listed defenses must be raised."   Professors John A. Lynch, Jr. and Richard W. Bourne, in Modern Maryland Civil Procedure (1993), do not attempt to reconcile the two sections;  rather, they argue that due process requires an interpretation that mandates that all non-enumerated affirmative defenses be specifically pleaded.   *Supra,* § 6.7(c) and (4), p. 413–14.

Thus, a plaintiff would not necessarily (and, indeed, would probably not) be on notice that a defendant is relying on an affirmative defense from a simple denial of the plaintiff's claims. Such notice is obviously important because even though the defendant would normally have the burden of production and persuasion on his affirmative defense, the plaintiff would have to produce rebuttal evidence pertaining to the defenses. See Lynch and Bourne, Modern Maryland Civil Procedure, § 6.7(c)(4), p. 414–15.

■ In this case, Lewis's Answer was a recitation of every defense listed in Rule 2–323 that might be applicable to a contract action. By pleading everything, the defendant informed the plaintiff of nothing. We shall here hold that Rule 2–323(a) means exactly what it says: "Every defense of law or fact to a claim for relief ... shall be asserted in an answer ...". This interpretation will serve to carry out the general philosophy of the Court of Appeals with regard to pleadings. That is, appropriate notice must be given to the opposing party so as to comply with the requirements of due process.

## SUFFICIENCY OF A DEFENSE RAISED IN ANSWER TO A PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Lewis argues in the alternative that it complied with Rule 2–323 because it raised the defense of negligent misrepresentation in its response to the Plaintiff's Motion for Summary Judgment.[3] Lewis relies on *Abramson v. Reiss*, 334 Md. 193,

---

**3.** It is clear that Lewis's answer alleging fraud as a defense does not serve to put Liberty on notice that the defense of negligent misrepresentation was also being asserted. *Whaley v. Maryland State Bank*, 58 Md.App. 671, 473 A.2d 1351 (1984). *Whaley* is cited by appellant as authority that the negligent misrepresentation must be specially pleaded. That case was decided when former Rule 342 d 1 was in effect. The rule permitted any party to a law action to plead in defense facts that would entitle him to relief in a court of equity. Negligent misrepresentation was such a defense. Though the rule was abolished when law and equity merged, the holding that an allegation of fraud "did not adequately set forth a cause of action based upon negligent misrepresentation," *id.* at 680, 473 A.2d 1351, is still viable.

638 A.2d 743 (1994), in which the defendant responded to the plaintiff's complaint by filing a motion for summary judgment on the grounds of charitable immunity. The Court of Appeals in *dicta* said, "The defense of charitable immunity may be raised by Motion for Summary Judgment. It also may be presented as an Answer to a Bill of Complaint." *Id.* at 195, n. 2, 638 A.2d 743.

Lewis's reliance is misplaced. First, *Abramson* was in a different procedural posture. In that case, the affirmative defense was advanced in a motion for summary judgment in response to a complaint, while Lewis's defense was raised as an answer to a motion for summary judgment when the case was already at issue. Second, the quoted statement from *Abramson* is clearly *dicta*. The precise question was not before the court in *Abramson.* Moreover, there is contrary *dicta* from the Court of Appeals in *Gilbert v. Washington Suburban Sanitary Commission,* 304 Md. 658, 500 A.2d 1039 (1985). In that case Gilbert, a temporary employee of WSSC, sued the WSSC for negligence. The WSSC responded by moving to dismiss on the grounds that plaintiff's sole remedy was before the Worker's Compensation Commission. The trial court treated the motion to dismiss as a motion for summary judgment and granted it; the Court of Appeals ruled that there was an issue of fact as to whether Gilbert was an employee of WSSC and vacated the lower court's order. In its opinion, however, the Court wrote: "The question of workmen's compensation as an exclusive remedy should have been raised as an affirmative defense." 304 Md. at 661, 500 A.2d 1039.

The Federal cases are instructive. The Federal courts hold that an affirmative defense may not be raised for the first time in a summary judgment motion. *In re Jackson Lockdown/MCO,* 568 F.Supp. 869, 886 (D.Mich.1983); *Local 149, Boot and Shoe Workers Union, AFL/CIO v. Faith Shoe Company,* 201 F.Supp. 234, 238 (D.Pa.1962). The Federal courts permit affirmative defenses to be raised for the first time on summary judgment when the motion is filed in response to the plaintiff's Complaint. *Livingston School Dis-*

*trict Nos. 4 & 1 v. Keenan,* 82 F.3d 912, 917 (9th Cir.1996); *Williams v. Murdoch,* 330 F.2d 745, 749 (3rd Cir.1964); *Katz v. Connecticut,* 307 F.Supp. 480, 483 (D.Conn.1969), aff'd. *per curiam,* 433 F.2d 878 (1970). Thus the Federal rule, which seems to be clearly established, is that an affirmative defense may be raised for the first time by summary judgment motion when that motion is the defendant's initial response to the plaintiff's complaint. *U.S. v. Burzynski Cancer Research Institute,* 819 F.2d 1301, 1307 (5th Cir.1987); *Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 96 (5th Cir.1976).

On the facts presented by this case, we hold that asserting a defense for the first time in response to a motion for summary judgment, when the case is at issue, does not satisfy the requirements of Rule 2–323. In view of Lewis' obligation to read the policy and because Lewis had not effectively pleaded negligent misrepresentation, judgment in favor of Liberty should have been granted on Count Two of the counterclaim.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY STRIKING THE JUDGMENT IN FAVOR OF LIBERTY MUTUAL REVERSED.**

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IN FAVOR OF BEN LEWIS REVERSED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR ENTRY OF JUDGMENT IN FAVOR OF LIBERTY MUTUAL IN ACCORDANCE WITH THIS OPINION.**

**APPELLEE TO PAY THE COSTS.**