MARY L. GATUSO *v.* CHARLES W. GATUSO

[No. 148, September Term, 1972.]

*Decided January 26, 1973.*

The cause was argued before ORTH, C. J., and POWERS and CARTER, JJ.

*George W. McManus, Jr.,* for appellant.

*C. Rogers Hall, Jr.,* with whom was *L. Awalt Weller* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

This appeal involves two questions:

1. What discretion does the Chancellor have when he is asked to hold in contempt a husband who has not obeyed an order to pay alimony, support and maintenance?

2. What discretion does the Chancellor have to enter an order which goes beyond the relief prayed or the issues framed in the pleadings?

The answer to the first is that he has such discretion, that it is very broad, and that its exercise will not be disturbed on appeal unless clearly abused. The answer to the second is that he has no authority, discretionary or otherwise, to rule upon a question not raised as an issue by the pleadings, and of which the parties therefore had neither notice nor an opportunity to be heard.

These conclusions require us to affirm in part and to reverse in part a decree entered in the Circuit Court for Carroll County in a case involving Mary L. Gatuso and Charles W. Gatuso.

The facts are unusual, to say the least. Mr. and Mrs. Gatuso were married in 1937 and lived together in Westminster until 1954. At that time they had three children, aged 13, 12 and 9, and were joint owners of a large brick house. Each of the three floors of the house was susceptible to use as a five or six room apartment. The mortgage balance at that time was about $6,700.00. In June, 1954, the wife filed a bill of complaint in the Circuit Court for Carroll County alleging that the husband had committed adultery, and praying alimony for herself and support for the children, as well as their custody. She did not pray a divorce. By a decree entered on 24 August 1954 the court ordered the husband to pay to the wife $30.00 a week as alimony for herself and for the support and maintenance of the minor children. The aggregate amount ordered was not allocated. Custody of the children was awarded to the wife.

The record in the case shows no further proceedings for over 17 years, when on 30 September 1971, the wife filed a petition reciting the 1954 decree, alleging that the husband "* * * has never made payment of the sums pursuant to the said decree, leaving a balance due and owing through August 27, 1971 of Twenty-Six Thousand Eight Hundred Twenty Dollars * * *", and praying that the husband be cited for contempt and that he be ordered to begin making the payments decreed. In the husband's answer to the petition he denied the allegation that he had not made payment of the sums due. He pointed out that the children had reached majority and had been self supporting before their majority, and asserted that he was not obligated to pay for their support after they became self supporting. He further asserted that the wife occupied one floor of the jointly owned house and received rentals from the tenants of the second and third floors, without any accounting to him for the rentals. He asked no affirmative relief; only that he may be hence dismissed with his costs.

Chief Judge James Macgill heard evidence on the peti-

tion and answer and thereafter on 5 March 1972 filed a Memorandum and Order. The order denied the prayer for a citation of contempt against the husband, ordered him to pay to the wife for her maintenance and support the sum of $7.50 per week accounting from the date of the order, and required the husband to pay the costs. The wife appealed.

At the hearing before Judge Macgill the wife testified that the husband had never made any payment required by the 1954 order. She said she occupied the first floor of the jointly owned house; that her married daughter occupied the second floor and paid rent; and that a son who occupied the third floor ordinarily paid rent although at the time of the hearing the son was ill and was not then paying anything. She offered no evidence of the husband's income or wealth, or his ability to pay.

The husband testified that he had made all payments required by the order until all the children became self supporting and the daughter married. He said that at one time he had fallen in arrears by $600.00 but that he had paid it. He said he did odd jobs painting and as a plumber's helper, but he did not state what his income was. He said he could not read or write. He said that for some years after the 1954 separation he had lived in the garage on the jointly owned property, but later had moved to Taneytown.

In her petition the wife did not ask for a determination of an amount of arrearage, or for a money judgment. Her prayer that the husband be ordered to begin making the payments decreed could add nothing to the previous order. She included no general prayer. Therefore the only relief she sought was to have her husband adjudged in contempt. Neither in his answer nor by way of a request for affirmative relief did the husband ask for modification of the 1954 decree or for an accounting for rents yielded by the jointly owned property.

We conclude that the only question properly before

the court was whether the husband had failed to make the payments required by the 1954 decree, and, if so, was such failure intentional and therefore contemptuous of that decree.

Though the judge noted the conflict between the wife's testimony that the husband had never paid anything, and the husband's testimony that he had made the required payments until the daughter's marriage, he made no finding resolving that conflict. He indicated some skepticism that the wife would wait 17 years to take any action if no payments had ever been made. He discussed the possible applicability of laches or limitations to at least some of the payments, but made no specific ruling in that respect. He concluded by observing that the husband did not have the remotest ability to make good even the amount of the arrears not barred by limitations, and that to hold him in contempt would be an exercise in futility.

The question of contempt for failure to comply with a support order was thoroughly discussed by Judge McWilliams for the Court of Appeals in *McDaniel v. McDaniel*, 256 Md. 684, 262 A. 2d 52. See also Maryland Rules 685 and P4. It is clear that citing a defendant to show cause why he should not be adjudged in contempt is not the equivalent of adjudging him in contempt. It is upon the hearing after the citation that the judge exercises his discretion whether or not to adjudge the defendant in contempt. Judge Macgill's conclusion in this case not to adjudge the husband in contempt was not an abuse of his discretion. We affirm that part of his decree.

In going further, Judge Macgill modified the 1954 order in two respects. In effect, he excused whatever arrearage there may have been up to the date of his order, without making a finding whether there was or was not any arrearage. Further, he modified the amount to be paid in the future. We must reverse that part of his de-

cree. On proper pleadings and a proper record, the same result may well have been reached. But given jurisdiction of the parties and of the subject matter, the authority of the court to act in any case is still limited by the issues framed by the pleadings.

In *Restatement, Judgments,* § 8 (c) (1942) it is said:

"Even though the State has jurisdiction over the parties and even though the court is one with competency to render the judgment, a judgment by default is void if it was outside the cause of action stated in the complaint and if the defendant was not given a fair opportunity to defend against the claim on which the judgment was based."

The due process aspect of granting relief to one party without notice and an opportunity to be heard on the issue being afforded the other party was discussed by the Court of Appeals in *Madaio v. Madaio,* 256 Md. 80, 259 A. 2d 524, where the Court said, at page 84:

"The right to object to the modification of an alimony order has been announced in the decisions of this Court. In *Braecklein v. Braecklein,* 136 Md. 32 (1920), our predecessors refused to affirm the modification by the court below of an earlier decree granting permanent alimony. Judge Adkins, for the Court, held that inasmuch as the record did not show that the affected spouse had been given 'notice and an opportunity to show cause to the contrary * * *' prior to the issuance of the modification order, this Court's approval would be withheld. *Id.* at 39. *See also Rethorst v. Rethorst,* 214 Md. 1, 15-16 (1957). The fact that we are concerned here with an order setting aside a decree providing for support and maintenance, whereas our decision in *Braecklein* dealt with a modification

of an award of permanent alimony seems to us to be without significance. *In either case, the judicial change of the provisions of an earlier decree for maintenance and support had been made in a manner which denied to the affected spouse due process of law."* (Emphasis supplied.)

Perhaps the equity court could best be presented with the opportunity to afford full justice to the parties to this case if the wife would petition for a money judgment for payments in arrears, and the husband would petition for modification of the 1954 decree. Our mandate will be without prejudice to such further proceedings, should the parties choose to pursue them.

> *Decree dated 3 March 1972 and filed 5 March 1972 affirmed in part and reversed in part, without prejudice to further proceedings. Appellee to pay costs.*