840 A.2d 173

**Edmund F. LEDVINKA, Jr.**

v.

**Joann LEDVINKA.**

**No. 2900, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Dec. 29, 2003.

422

Anthony T. Bartlett (Mister, Winter & Bartlett, LLC on the brief), Timonium, for Appellant.

Bambi Glenn, Towson (John W. Nowicki, Nowicki & Tirabassi, P.A. on the brief), Baltimore, for Appellee.

Panel: GREENE, THEODORE G. BLOOM, (Retired, Specially Assigned), and RAYMOND G. THIEME, JR., (Retired, Specially Assigned), JJ.

GREENE, Judge.

Edmund F. Ledvinka, Jr. appeals a decision by the Circuit Court for Baltimore County, setting aside the conveyance of 19730 Eagle Mill Road as a fraudulent conveyance pursuant to Md.Code (2000), §§ 15–201 *et. seq.* of the Commercial Law Article, and an award of $27,000 in attorney's fees. Appellee is Joann Ledvinka, appellant's ex-wife. The two were before the court seeking an annulment, determination of child custody, visitation, and attorney's fees.

## Issues

Appellant presents three questions for our review. We have rewritten them for clarity:

1. Whether the court erred by setting aside the conveyance of 19730 Eagle Mill Road as a fraudulent conveyance pursuant to Md.Code (2000), §§ 15–206 and 15–207 of the Commercial Law Article when this cause of action was neither pleaded nor was relief requested prior to trial.

2. Whether the court erred by setting aside the conveyance of 19730 Eagle Mill Road as a fraudulent conveyance pursuant to Md.Code (2000), §§ 15–206 and 15–207 of the Commercial Law Article when the grantee and the heirs of the deceased grantor were not named as parties to the proceedings.

3. Whether the court erred ·by awarding appellee $27,000.00 in attorney's fees.

We hold that the trial court erred in setting aside the conveyance. The authority of a trial court to act in a given case is limited by the issues framed by the pleadings. Because we reverse on the first issue, we need not address the second question presented regarding necessary parties to an action to set aside the conveyance. We vacate the award of attorney's fees on the ground that the trial court neither made findings of fact regarding its basis for awarding the fees nor a determination that the fees were reasonable. We remand for further consideration of the facts in light of the statutory requirements for an award of attorney's fees. Lastly, acting pursuant to our authority under Maryland Rule 8–131(a), we hold that, because the marriage was void *ab initio*, the court erred in granting an absolute divorce rather than an annulment.

## Facts and Procedure

The procedural history of the efforts of the parties to obtain

a divorce is extensive.[1] Relevant to our review, however, is a hearing held on December 17 and 18, 2002, on a complaint for annulment filed by appellee. The Amended Complaint for Annulment, Custody, Alimony and other relief contained three counts: an annulment (count one); intentional infliction of emotional distress (count two); and fraud (count three).[2] Appellee sought $250,000 in compensatory damages and $250,000 in punitive damages. Counts two and three were eventually dismissed by appellee. Before the December hearing, during a conference in chambers, the parties agreed that the only issues before the court were the annulment on behalf of Mrs. Ledvinka, custody of the minor child, visitation, and attorney's fees. The parties also stipulated that there was no marital property to be valued and distributed.

Appellant and appellee were married on September 30, 1995, in a religious ceremony in Harford County, Maryland. One child was born to the parties, Mark Edward Ledvinka, on November 8, 1996. On or about November 3, 1997, the parties separated. Both parties agreed the marriage was not a conventional one.

At the time the parties were married in 1995, appellant was already married to Velma Ledvinka. Appellant and Velma Ledvinka were married on May 9, 1964. Although they separated in 1986, their divorce did not become final until July 20, 1998. In 1990, the two signed a Separation and Property Settlement Agreement whereby appellant agreed to pay Velma Ledvinka $300 a week, on demand, for a period of ten years, and to transfer 100% of his pension from his employer, including all stock, bonds, savings and 401k plans to her. Additionally, Velma Ledvinka was awarded all of the marital property. In an unrelated matter, appellant submitted to a

---

1. Both parties filed actions for divorce soon after their separation. In a joint motion, the parties consolidated and dismissed the divorce proceedings and agreed to proceed pursuant to the Amended Complaint for Annulment.

2. Count three is captioned "Fraud" and refers to fraudulent inducement to marry.

judgment against him in Velma Ledvinka's favor in the amount of $54,700. Appellant also borrowed $10,000 from Velma Ledvinka to help pay his attorney's fees in this matter. As a result of the child support and judgement in Velma Ledvinka's favor, appellant takes home approximately $100 of his $1,000 per week gross pay.

From 1991 through June of 1998, appellant and his brother, Charles Ledvinka,[3] owned the property located at 19730 Eagle Mill Road. The record does not reflect how the property was titled except that both men were on the deed.[4] The property was purchased for $165,000. Appellant testified that Charles Ledvinka paid all of the debts associated with the house, including the mortgage, which was paid in full as of the hearing. The parties never resided in the home. Joyce Hohner, appellant's girlfriend and the mother of two of his children, lived in the house with Charles Ledvinka. She testified that in lieu of rent she took care of Charles Ledvinka, the house, and the gardens. On June 22, 1998, appellant transferred his interest in the house to Ms. Hohner for no consideration. Appellant testified that the transfer was made at the request of his brother, who did not want the property tied up by the divorce proceedings. Specifically, he did not want appellee to "get at" the property.

In her closing argument at trial, appellee first raised the issue of valuing assets that may have been fraudulently transferred in connection with her request for attorney's fees. Appellee originally sought an award of $27,000 in attorney's fees, however, the amount was amended on the record at trial to $26,000. Appellee first argued that the alimony payments to appellant's first wife were "[t]o try and make sure [appellant] doesn't have any money basically[.]" Appellee's second argument was in response to a question by the trial court asking about its authority to "take assets that [appellant] may

---

3. Charles Ledvinka is now deceased.

4. In her brief, appellee avers that the property was owned as a joint tenancy according to the Land Records of Baltimore County.

or may not have dissipated or transferred in anticipation of litigation[.]" In response, appellee stated that she believed "the fraudulent conveyance statute allowed the court to exercise its authority to set aside a transfer with or without litigation in support of [it]." Appellant responded that if Joann Ledvinka was seeking some form of fraudulent conveyance, the issue was neither pleaded nor was it one of the issues the parties stipulated as being in controversy at the beginning of the hearing. The court requested that the parties brief the issue.

On January 28, 2003, the court granted an absolute divorce on the basis that appellant was already married at the time of his marriage to appellee. The court also held that custody of the child would remain with appellee and appellant would receive three weeks of visitation during the summer in addition to every other weekend in accordance with the schedule already in place. Child support obligations remained at the level of $540 a month. The court reserved its ruling on the issue of fraudulent conveyance and attorney's fees for further consideration.

In a separate written Ruling and Opinion dated January 28, 2003, the trial court found that appellant had engaged in a fraudulent conveyance in the transfer of 19730 Eagle Mill Road, Baltimore County, in violation of Md.Code (2000), §§ 15–206 and 15–207 of the Commercial Law Article. Specifically, the court found that appellant transferred his share of the property to Ms. Hohner for no consideration because of his pending divorce from Joann Ledvinka and with the intent of keeping appellee from "getting at" it. The court set aside the conveyance to the extent necessary to satisfy an award of attorney's fees to appellee in the amount of $27,000.

Additional facts will be included as necessary.

## DISCUSSION

### I. Fraudulent Conveyance

■ Appellant claims the trial court erred in setting aside, as fraudulent, the conveyance of 19730 Eagle Mill Road. He

raises two grounds for objection: first, that the cause of action was neither pleaded nor was relief on this ground requested in any pleading before trial; and second, that necessary parties were not joined in the action. We agree with appellant that the court exceeded its authority in setting aside the conveyance when no cause of action sufficient to put appellant on notice that the property was in dispute was pleaded in this case. Because we conclude the court may not apply the fraudulent conveyance statute in this action, we need not address the question of necessary parties.

In her amended complaint for annulment, custody, alimony, and other relief, appellee set forth three causes of action: annulment; intentional infliction of emotional distress; and fraud. By the trial date, only the annulment cause of action remained. Count one, the annulment, contained no facts sufficient to put appellant on notice that the conveyance of the non-marital home was challenged. The only reference to real property in the amended complaint is in paragraph six. It reads: "The parties acquired real property during the marriage which was used by the parties as their principal residence and is their family home." At trial it was established that the marital home was located at 3019 Breidenbaugh Road in White Hall, Maryland. There are no other facts in the pleadings regarding real property.

Appellant claims that the trial court's action in setting aside the conveyance was erroneous as a matter of law. Relying on the case of *Gatuso v. Gatuso*, 16 Md.App. 632, 299 A.2d 113 (1973), and for the following reasons, we agree.

■ We begin by recognizing that where a chancellor finds that property was intentionally dissipated in order to avoid inclusion of that property towards consideration of a monetary award, such intentional dissipation is no more than a fraud on marital rights. *Jeffcoat v. Jeffcoat*, 102 Md.App. 301, 306, 649 A.2d 1137 (1994)(quoting *Sharp v. Sharp*, 58 Md.App. 386, 399, 473 A.2d 499 (1984) (internal citation omitted)). This is true even when the property dissipated is non-marital property. *Sharp*, 58

Md.App. at 395, 473 A.2d 499.[5] Furthermore, it has been held that "a conveyance made by a husband in anticipation of the wife's proceedings for divorce ... and to prevent her from obtaining alimony, is fraudulent, and may be set aside[.]" *Levin v. Levin,* 166 Md. 451, 453, 171 A. 77 (1934) (permitting a suit pursuant to the predecessor to today's fraudulent conveyance statute). These cases are distinguishable from the case *sub judice* in that the causes of action were either pleaded in the divorce proceeding or in a separate action.

 Despite the fact that Maryland has long since abandoned the necessities of common law pleading, it is clear that the pleading requirements "remain important elements in the process of bringing a case to trial[,]" and "cannot be dispensed with altogether." *Liberty Mut. Ins. Co. v. Ben Lewis Plumbing, Heating & Air Conditioning, Inc.,* 121 Md.App. 467, 475, 710 A.2d 338 (1998). Pleading serves four important purposes: (1) it provides notice to the parties as to the nature of the claim or defense; (2) it states the facts upon which the claim or defense allegedly exists; (3) it defines the boundaries of litigation; and (4) it provides for the speedy resolution of frivolous claims and defenses. *Id.* (citing *Scott v. Jenkins,* 345 Md. 21, 27–28, 690 A.2d 1000 (1997)). The most important of the four is notice. *Id.* (citing *Scott,* 345 Md. at 28, 690 A.2d 1000). In *Liberty Mutual,* we recognized that an important basis for the Court of Appeals' holding in *Scott* was the due process concerns raised by lack of notice in the pleadings. *Id.*

In *Gatuso,* 16 Md.App. 632, 299 A.2d 113, we addressed the issue of what discretion a trial court has to enter an order on issues outside the relief prayed or the issues framed in the pleadings. We held that a trial court "has no authority, discretionary or otherwise, to rule upon a question not raised as an issue by pleadings, and of which the parties therefore

---

**5.** The property in question was a farm owned by the husband. The court found that the husband had recently refinanced the property, leaving him zero equity in the property. *Sharp,* 58 Md.App. at 398, 473 A.2d 499.

had neither notice nor an opportunity to be heard." *Id.* at 633, 299 A.2d 113.

The plaintiff in *Gatuso* sought an order to have her husband adjudged in contempt of a 17–year old court order awarding her alimony and child support.[6] The wife claimed that her husband owed her $26,829 in back payments. The court looked beyond the pleadings and ruled on the facts as they were presented at trial, denied the prayer for a citation of contempt, modified the alimony award, and required the husband to pay the costs associated with the litigation. The plaintiff appealed, raising the issue of the court's authority to reach beyond the pleadings to grant relief. With regard to the trial court's ruling, we wrote: "On proper pleadings and a proper record, the same result may well have been reached. But given jurisdiction of the parties and of the subject matter, the authority of the court to act in any case is still limited by the issues framed by the pleadings." *Id.* at 636, 299 A.2d 113. We think *Gatuso* is analogous to the case at bar.

We find that the trial court in the case *sub judice* had jurisdiction over the subject matter because the court was required to determine the parties' ability to pay attorney's fees and the determination requires a valuation of assets. *See* Md.Code (1984, 1999 Rep. Vol.) § 12–103(b)(1) of the Family Law Article. The court's jurisdiction does not, however, encompass legal action affecting the title of the assets. We recognize that the rationale behind the court's action regarding the property was the award of attorney's fees. Setting aside the conveyance, however, was beyond the scope of the pleadings and beyond the court's authority. We hold, therefore, that the trial court erred in setting aside the conveyance of 19730 Eagle Mill Road.

We recognize that the court acted on its belief that appellant had fraudulently transferred the property as a means of limiting his assets in anticipation of the divorce litigation. We further recognize that, based on the facts as they were

---

6. The parties did not seek a divorce.

presented at trial, the court could reasonably come to that conclusion. The error here, however, is not factual; rather it is procedural, as discussed above. In holding as we do today that the property may not be set aside in this litigation, we are not passing judgment on the validity of the claim if properly pleaded in a different proceeding.

Because we hold that the trial court was without the authority to set aside the conveyance without the issue being properly framed by the pleadings, we need not address appellant's argument regarding the failure to join necessary parties.[7]

## II. Attorney's Fees

■ Md.Code (1984, 1999 Rep. Vol.) § 12–103 provides:

(a) The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties[.]

(b) Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party;

(3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

*See also Barton v. Hirshberg*, 137 Md.App. 1, 31–33, 767 A.2d 874 (2001). For the court to award attorney's fees, the fees must be reasonable. *Petrini v. Petrini*, 336 Md. 453, 467, 648 A.2d 1016 (1994)(citing *Brown v. Brown*, 204 Md. 197, 213, 103 A.2d 856 (1954)).

---

7. Moreover, on the record before us we would be unable to determine the required parties. Without the deeds to the property, this Court cannot determine if Ms. Hohner is the only necessary party or, depending on how the property was titled before and after the conveyance, whether Charles Ledvinka's heirs have a claim on the property as well.

██ An award of costs and fees is governed by the abuse of discretion standard " 'and such an award should not be modified unless it is arbitrary or clearly wrong.' " *Barton v. Hirshberg*, 137 Md.App. at 32, 767 A.2d 874 (quoting *Rosenberg v. Rosenberg*, 64 Md.App. 487, 538, 497 A.2d 485, cert. denied, 305 Md. 107, 501 A.2d 845 (1985)). Abuse of discretion is determined by evaluating the judge's application of the statutory criteria as well as the consideration of the facts of the particular case. *Petrini*, 336 Md. at 468, 648 A.2d 1016. "Consideration of the statutory criteria is mandatory in making an award and failure to do so constitutes legal error." *Id.* (citing *Carroll County v. Edelmann*, 320 Md. 150, 177, 577 A.2d 14 (1990)).

██ Consistent with these decisions, we review the trial court's award of attorney's fees in the amount of $27,000 to appellee. In its written Opinion and Order, the trial court held:

> Under Md.Code Ann., Family Law Article § 12–301, the court may award to either party counsel fees in this application for a decree of custody, support, and visitation. After considering the financial needs and abilities of the parties, as well as the substantial justification for bringing the suit, the court finds that it is just and proper under all circumstances to award attorney's fees to the [appellee]. By setting aside the fraudulent conveyance, Mr. Ledvinka has a one-half interest in the property sufficient to satisfy the award of attorney's fees that [appellee] has prayed for. Therefore, this court finds that [appellee] has proven that [appellant] has the ability to pay. As such, pursuant to Md.Code Ann., Commercial Law Article § 15–109, the conveyance is ORDERED to be set aside to the extent necessary to satisfy the claim for attorney's fees and costs in the amount of $27,000. This award is hereby reduced to judgment and permitted to enroll directly against the aforesaid property for collection purposes.

Based on the record, we conclude that the trial court failed to make findings of fact to justify the award of attorney's fees.

Absent the court stating the basis for its determination, this Court cannot properly review the decision. *See Painter v. Painter*, 113 Md.App. 504, 529, 688 A.2d 479 (1997)(" 'In a case in which bills for legal services are challenged, [the trial court] ought to state the basis for his decision so it can be reviewed, if necessary, on appeal.' " (quoting *Randolph v. Randolph*, 67 Md.App. 577, 589, 508 A.2d 996 (1986))). We remand for a determination of attorney's fees in accordance with the statute.

### Divorce/Annulment

We begin by recognizing that neither of the parties challenged the grant of an absolute divorce instead of an annulment. Ordinarily we would refrain from addressing issues not presented. Md. Rule 8–131(a)("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]"). The same rule, however, also permits the appellate courts to "decide such issues if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." *Id.* Our research reveals a change in the law since the last published opinion on the topic of the appropriate remedy for dissolution of a marriage which is void *ab initio*. In recognition of the potential confusion caused by the change, we exercise our authority pursuant to the Rule to address the issue.

We begin with a brief history of marriage, annulment, and divorce in Maryland.[8] For a valid marriage to exist, "[t]here must be certain conduct engaged in by competent parties under circumstances whereby they intend matri-

---

**8.** For a detailed discussion of the history of divorce and annulment in Maryland see *Thomas v. Thomas*, 294 Md. 605, 609–13, 451 A.2d 1215 (1982); *Stewart v. Stewart*, 105 Md. 297, 300, 66 A. 16 (1907); *Ridgely v. Ridgely*, 79 Md. 298, 300–05, 29 A. 597 (1894); John S. Strahorn, Jr., *Fifteen Years of Change in Maryland Marriage and Annulment Law and Domestic Relations Changes*, 13 Md.L.Rev. 128 (1953); John S. Strahorn, Jr., *Void and Voidable Marriages in Maryland and Their Annulment*, 2 Md.L.Rev. 225 (1938).

mony and both understandingly and freely consent to acquiring that status." John S. Strahorn, Jr., *Void and Voidable Marriages in Maryland and Their Annulment*, 2 Md.L.Rev. 211, 216 (1938). When one party to a marriage is already married to someone else, the first marriage not having been terminated by annulment, absolute divorce, or death, he or she is not competent to enter into the new marriage. *Id.* at 225. It is the lack of capacity to enter into the new marriage that renders the second marriage void *ab initio. Id.*

In the Act of 1777, ch. 12, § 15, the Maryland legislature first granted the general court the authority to "inquire into, hear and determine, either on indictment, or petition of either of the parties, the validity of any second marriage, the first subsisting, null and void." *Ridgely v. Ridgely,* 79 Md. 298, 303, 29 A. 597 (1894). This authority was later transferred to the courts of equity by the marriage Act, Md.Code (1860), Art. 60, § 25. *Id.* In *LeBrun v. LeBrun,* 55 Md. 496 (1881), the Court reviewed the three means of conferring authority on a court of equity to declare a marriage null and void. The first basis of authority is the general jurisdiction of the court of equity in matters of fraud affecting contracts, that is, marriages procured by abduction, terror, fraud, or duress. *Id.* at 503. The second basis is the marriage Act discussed above. *Id.* And the third basis is by the authority of the divorce laws, Md.Code (1860), Art. 16, § 25, which permitted a divorce *a vinculo matrimonii* (essentially, an absolute divorce), on the ground that the marriage was void *ab initio.* Today the courts of the State derive their authority to grant an annulment from the general jurisdiction of the equity courts. Md. Code (1984, 1999 Rep. Vol.), § 1–201(a)(3) of the Family Law Article.

 Divorce, on the other hand, is a creature of statute. *Wallace v. Wallace,* 290 Md. 265, 271, 429 A.2d 232 (1981)(quoting *Bender v. Bender,* 282 Md. 525, 529, 386 A.2d 772 (1978); *Altman v. Altman,* 282 Md. 483, 490, 386 A.2d 766 (1978); *Emerson v. Emerson,* 120 Md. 584, 589, 87 A. 1033 (1913)). The authority of the court to grant a divorce "stems

entirely from and is circumscribed by statutory authority." *Thomas*, 294 Md. at 610, 451 A.2d 1215 (internal citations omitted). The first statutory authority for a court to grant a divorce came in § 2, Ch. 262 of the Acts of 1841. The statute permitted divorce "for any cause which by law of this State render a marriage null and void *ab initio.*" The "void *ab initio*" provision remained a ground for divorce until 1983, when the cause was deleted from the list.[9] At the time of the annulment hearing in the present case, the grounds for an absolute divorce were: adultery, desertion, voluntary separation, conviction of a felony or misdemeanor, 2-year separation, insanity, cruelty of treatment, and excessively vicious conduct. Md.Code (1984, 1999 Rep. Vol.), § 7–103 of the Family Law Article.

 Appellee sought an annulment on the sole ground that the marriage was void *ab initio* as a result of appellant already being married at the time of their marriage. There was a discussion during closing arguments regarding the appropriate term for the dissolution of the Ledvinka "marriage," that is, should a divorce or an annulment be granted. The court, believing either method was permissible, granted an absolute divorce.

The Court of Appeals was presented with a similar situation in the matter of *Hall v. Hall*, 32 Md.App. 363, 362 A.2d 648 (1976). In *Hall*, the court was asked to decide if a trial court erred in dismissing a bill of complaint for an annulment filed by a husband and instead granting a divorce a *vinculo matrimonii* filed by his wife. Both complaints were supported by an allegation of bigamy. The court found that, since the marriage was void *ab initio*, it could grant either an annulment or a divorce pursuant to Md.Code (1957, 1966 Rep. Vol.),

---

9. Md.Code (1860) Art. 16 § 25; (1878) Art. 51 § 12; (1888) Art. 16 § 36; (1904) Art. 16 § 36; (1912) Art. 16 § 37; (1924) Art. 16 § 38; (1939) Art. 16 § 40;(1947) Art. 16 § 40; (1951) Art. 16 § 33; (1957) Art. 16 § 33; (1957, 1966 Rep. Vol.) Art. 16 § 24;(1957, 1981 Rep. Vol.) Art. 16 § 24. The ground was deleted from the list by 1983 Md. Laws, Chap. 491. There is no indication in the legislative history as to why the ground was repealed.

Art. 16 § 24. In *Hall* the court wrote that "[a]n annulment of the marriage fails to recognize any marital relationship between the parties, while a divorce, on the other hand, does recognize the marital relationship." *Hall*, 32 Md.App. at 367, 362 A.2d 648. *Hall* held that, under the circumstances, the dissolution of the marriage by divorce was the more appropriate remedy. *Id.*

The law as it existed in *Hall*, however, is no more. As we stated earlier, divorce is a creature of statute and only the grounds enumerated in the statute will support a divorce decree. Because the ground of void *ab initio* is no longer available under the statute, the only remaining option for dissolution of a bigamous marriage is annulment. We therefore hold that the trial court erred in granting an absolute divorce on the ground that the marriage was void *ab initio*. On remand the court should grant the parties an annulment on the specified ground pursuant to the court's general jurisdiction of equity matters. *See* Md.Code (1984, 1999 Rep. Vol.) § 1–201(a)(3) of the Family Law Article.[10]

## CONCLUSION

For the foregoing reasons, we hold that the trial court erred in setting aside the conveyance of property and in granting an absolute divorce rather than an annulment.

**ORDER SETTING ASIDE THE CONVEYANCE OF PROPERTY REVERSED. ORDER AWARDING ATTORNEY'S FEES VACATED. ORDER GRANTING AN ABSOLUTE DIVORCE REVERSED.**

**CASE IS REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**

---

**10.** The grant of an annulment instead of an absolute divorce will have no effect on the trial court's authority to resolve the issues raised as to custody, visitation, child support, and attorney's fees. See Md. Rules 9–201 *et. seq.* (governing circuit court's authority in actions for divorce, annulment, alimony, child support, and child custody).