888 A.2d 1230

**Moustafa M. MOUSTAFA**

v.

**Mariam M. MOUSTAFA.**

**No. 2517 Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Dec. 23, 2005.

Charles M. Tobin, Silver Spring, for Appellant.

Jon W. Sargent, Greenberg Felsen & Sargent, LLC, Rockville, for Appellee.

Argued before MURPHY, C.J., SALMON and SHARER, JJ.

MURPHY, Chief Judge.

The parties to this appeal from the Circuit Court for Montgomery County, Moustafa M. Moustafa (Mr. Moustafa), appellant, and Mariam M. Moustafa (Mrs. Moustafa), appellee, are before this Court for the second time.  In an unreported opinion filed on June 7, 2004, this Court held "that the circuit court erred in failing to make separate awards of child support and alimony *pendente lite* and, therefore, we shall reverse and remand this case to the circuit court for further proceedings consistent with this opinion." *Moustafa v. Moustafa*, No. 2848, September Term, 2002, 157 Md.App. 714 (*Moustafa* I).

The **Background** section of that opinion includes the following information:

> The parties were originally married in Cairo, Egypt on June 10, 1976. They came to the United States in 1978. They have two children, Sharon, born May 5, 1981, and Karim, born July 18, 1989. Both children reside with appellee in the family home on Shady Grove Lane in Montgomery County. Appellant has ownership interests in a number of businesses in the United States and in Egypt including, but not limited to, Eagle Manufacturing and Trading, Inc., M & M Construction Company, and United Technology Group.
>
> On September 16, 1985, a divorce decree was issued to the parties by the Arab Republic of Egypt at that nation's consulate in Washington, D.C. The foreign decree was adopted and enrolled by the Circuit Court for Montgomery County on March 6, 1987.
>
> On November 18, 1985, appellant married Faten Zawawi. According to appellee, appellant told her that his marriage to Zawawi was solely to allow him to become a United States citizen, and that he would later divorce her and return to appellee.
>
> Appellee asserts that she and appellant were remarried in Egypt on June 14, 1986. Appellant denies that the parties were remarried. Appellee maintains that prior to their second marriage, appellant showed her a document that he represented to be a divorce decree reflecting his divorce from Zawawi. It is undisputed, however, that appellant did not actually obtain a divorce from Zawawi until February 28, 1989.

The further proceedings ordered by this Court concluded with a judgment entered by the Honorable DeLawrence Beard that, among other things, "annulled" the parties' June 14, 1986 marriage, and required that appellant pay to appellee (1) a monetary award, (2) "indefinite and permanent" alimony, (3) child support, and (4) counsel fees. The judgment also provided that appellant's alimony and support obligations were

"accounting from June 17, 2002," the date on which appellee filed her complaint for divorce and/or annulment. In an OPINION that accompanied the judgment, Judge Beard stated the following findings and conclusions:

> The parties divorced on September 16, 1985, in a Muslim proceeding that was enrolled in Montgomery County in 1987 (Civil Case No. 21304). Subsequent to the parties' divorce in 1985, [Mrs. Moustafa] returned to Egypt to live. On November 19, 1985, [Mr. Moustafa] married Ms. Faten Zawawi. In 1986, while on a visit to Egypt, the parties were lawfully married a second time on June 14, 1986. [Mr. Moustafa] did not obtain a divorce from Ms. Zawawi until April 28, 1989. At the time that the parties were married on June 14, 1986, [Mr. Moustafa] was still married to Faten Zawawi. In an Egyptian proceeding in November 2002, [Mr. Moustafa], after [Mrs. Moustafa] filed for divorce in this Court, renounced the validity of the 1986 marriage contract with [Mrs. Moustafa].

> \* \* \*

> There is no dispute that [Mr. Moustafa] was married to Faten Zawawi at the time the parties were married on June 14, 1986. As a result of [Mr. Moustafa]'s bigamy, this Court must grant an annulment to [Mrs. Moustafa].

> \* \* \*

> The Defendant claims that he obtained a divorce from [Mrs. Moustafa] in Egypt on November 4, 2002. Such a divorce is not entitled to comity by this Court which will not proceed to the adjudication of a matter involving conflicting rights and interests until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding and given reasonable opportunity to appear and be heard.

> In the present case, [Mrs. Moustafa] was neither notified nor participated in the Egyptian divorce proceeding. Absent any knowledge or opportunity to participate in the proceeding, [Mrs. Moustafa] was not afforded due process and the Decree shall not be recognized.

This Court's authority to grant an annulment to [Mrs. Moustafa] does not affect the Court's authority to award [Mrs. Moustafa] relief to include, but not be limited to custody, child support, alimony, monetary award or attorneys' fees. In *Ledvinka* [*v. Ledvinka*, 154 Md.App. 420, 840 A.2d 173 (2003)], the Court recognized this Court's authority to resolve custody, child support, and attorneys' fees when granting an annulment. The monetary award statute, Family Law Article, Section 8–203, also confirms that in a proceeding for an "annulment", the Court shall determine which property is marital property. Similarly, under Section 11–101, the Court may award alimony under (a)(2)(i) when there is an annulment.

\* \* \*

The Defendant is currently employed with M & M Construction Company, earning approximately $16,000 per month. For approximately ten (10) years prior to 1991, [Mrs. Moustafa] worked at a print shop where she operated a press and did photography. Since 1991, [Mrs. Moustafa] has not worked outside the home, and thus generates no income.

\* \* \*

The parties' most recent marriage has lasted eighteen (18) years. Overall, the parties have been married since 1976, or twenty-eight (28) years, but for brief separation and divorce of approximately one (1) year.

\* \* \*

[Mrs. Moustafa] has had breast cancer and currently has an abdominal condition for which she is presently undergoing treatment. [Mrs. Moustafa] has also been diagnosed as clinically depressed. [Mr. Moustafa] suffers from hypertension and a left hand palsy.

\* \* \*

The Court finds that [Mr. Moustafa] dissipated marital assets in the amount of sixty-eight thousand five hundred ($68,500.00) dollars by writing checks to his brother, Saleh Moustafa, and his business, M & M Construction. [Mr.

Moustafa] dissipated marital assets in the amount of one hundred sixty thousand seven hundred fifty-six ($160,756.00) dollars when he executed a Note to his brother, Saleh Moustafa, and recorded it as a Deed of Trust on the former marital home. [Mr. Moustafa] dissipated marital assets in the amount of seventy-four thousand five hundred ($74,-500.00) dollars by transferring money by wire to his current ... wife, Rania Kamal.

Further, the Court finds that [Mr. Moustafa]'s withdrawing all of the monies in his IRA account in direct violation of Judge Dugan's Order dated June 21, 2002 constitutes dissipation of property. The IRA account is valued at approximately thirty-six thousand ($36,000.00) dollars.

Here, [Mr. Moustafa]'s wiring monies to Ms. Karnal, his new wife, writing checks to his brother, Saleh, and withdrawing all of his IRA monies all constitute an intentional dissipation of assets. Such dissipation is included in calculating the monetary award.

\* \* \*

In this case, [Mrs. Moustafa] had substantial justification for prosecuting the annulment and for expending the sum of attorneys' fees and costs. In considering the respective financial positions of the parties, the Court recognizes that [Mrs. Moustafa] does not have any ability to make the payment toward these fees. By contrast, [Mr. Moustafa] had a substantial ability to pay the fees when considering [Mr. Moustafa]'s most recent bank statements which reflect over one hundred thousand ($100,000.00) dollars per month being received by [Mr. Moustafa] in the several months prior to trial.

Appellant now argues to us that (in the words of his brief) he is entitled to:

(1) a reversal of the annulment[;]

(2) a remand for a determination of whether the parties were married in 1986[;]

(3) a reversal of the order to pay the arrearage based upon the vacated order[;]

(4) a reversal of the award of permanent alimony and the amount of alimony based on an erroneous calculation of Appellant's current salary and ability to pay, the inclusion of expenses in the Appellee's financial statement for a daughter that [appellant] had no obligation to support[;] and

(5) a reversal of the order including Appellant's promissory note to his brother as a dissipated sum.

In support of these arguments, appellant presents four questions for our review:

I.   IF IT FINDS THAT A MARRIAGE OCCURRED, DOES A MARYLAND COURT, HAVING PERSONAL JURISDICTION OVER THE PARTIES, HAVE AUTHORITY TO VOID A BIGAMOUS MARRIAGE WITHOUT ANY SHOWING THAT IT WAS INVALID IN THE ISLAMIC NATION WHERE IT WAS ENTERED?

II.  MAY A TRIAL COURT ASSESS AN ARREARAGE IN "SUPPORT" PAYMENTS BASED UPON AN ORDER PREVIOUSLY VACATED IN AN INTERLOCUTORY APPEAL?

III. IS THE BROAD DISCRETION OF THE TRIAL COURT, ANTICIPATING THE FUTURE, SUFFICIENT FOR IT TO DECLARE, IN THE ABSENCE OF ANY EXPERT TESTIMONY, THAT A PERMANENT ALIMONY AWARD IS WARRANTED?

IV.  MAY A COURT FIND A DISSIPATION OF MARITAL PROPERTY WITHOUT EVIDENCE OF INTENT?

For the reasons that follow, we shall affirm the judgment of the circuit court.

## I.

We reject the proposition that Judge Beard should have speculated that, under Egyptian law, a man can be

married to more than one woman at the same point in time. In *Maple v. Maple*, 566 P.2d 1229 (Utah 1977), while rejecting Mr. Maple's "contention that since the marriage was annulled he should have no further obligation to the [appellee]," the Supreme Court of Utah stated:

> [Appellant's] counsel represents that he has gone to a great deal of trouble to determine and show that under the law of Thailand, a marriage with one already married is a nullity. Rule 9, Utah Rules of Evidence provides that this can be done by obtaining a copy of the law and presenting it to the court. But we do not see any difficulty here from failing to do so. The rule is that unless the law of a foreign jurisdiction is proved to be otherwise, it will be presumed to be the same as the law of the forum state.

*Id.* at 1230 (footnotes omitted). We agree with that analysis, which is entirely consistent with Maryland law. *See Hosain v. Malik*, 108 Md.App. 284, 302–03, 671 A.2d 988 (1996).

If appellant wanted Judge Beard to apply Egyptian law to the "annulment" issue, appellant was required by Md.Code Ann., Cts. & Jud. Proc. § 10–505 (2004) to (1) provide notice of his intent to rely upon that law, and (2) prove what that law is. Moreover, even if appellant had complied with these foundational requirements, the Court of Appeals has stated:

> Although foreign judgments are entitled to a degree of deference and respect under the doctrine of comity, courts will nonetheless deny recognition and enforcement to those foreign judgments which are inconsistent with the public policies of the forum state. *Malik v. Malik*, 99 Md.App. 521, 534, 638 A.2d 1184, 1190 (1994) ("where [a foreign] judgment is ... against public policy ... it will not be given any effect by our courts").

*Telnikoff v. Matusevitch*, 347 Md. 561, 574, 702 A.2d 230 (1997). For these reasons, Judge Beard did not err or abuse his discretion in applying "the law of the forum."

## II.

It is clear from the record of the case at bar that appellant's second question is both hypothetical and moot

because (1) as noted by Judge Beard, Md.Code Ann., Fam. Law § 12–101(a) (2004) provides that appellant's support obligations can be "back dated" to June 17, 2002, the date on which appellee filed her complaint, and (2) in *Moustafa* I, this Court expressly rejected "appellant's claim that the parties' second marriage was void *ab initio* because of his intentional bigamy and, therefore appellee is disqualified from receiving alimony *pendente lite.*"

## III.

■ Emphasizing that appellee presented "no expert testimony," appellant argues that Judge Beard was "clearly erroneous" in finding that appellee suffered from "clinical" depression. This erroneous finding, according to appellant, requires that we vacate the alimony award and remand for further proceedings on the issues of (1) whether appellee is entitled to "indefinite" alimony, and (2) the amount of whatever type of alimony is awarded. There is no merit in this argument. The record shows that, in applying Md.Code Ann., Fam. Law § 11–106(c)(1)–(2) (2004), Judge Beard was not clearly erroneous in finding that there would be an "unconscionable disparity" in the parties' standards of living unless appellee were awarded indefinite alimony.

■ Appellant also argues that the evidence was insufficient to support Judge Beard's finding that appellant had a monthly income of $16,000.00. It is well settled that disbelief of a party's testimony does not constitute affirmative evidence to the contrary, and that a court "may not find a specific amount of imputed or undisclosed actual income without supporting evidence." *Long v. Long,* 141 Md.App. 341, 349, 785 A.2d 818 (2001). As we pointed out during oral argument, however, Judge Beard was entitled to (1) accept all, part, or none of the testimony of any witness, and (2) draw reasonable inferences from the evidence accepted as true. The case at bar is simply not one in which the court's income calculation is based solely upon disbelief of a party's testimony as to his or her actual income. From our review of the documentary

evidence presented to Judge Beard, we are persuaded that his calculation of appellant's income was not erroneous—"clearly" or otherwise.

## IV.

The answer to appellant's fourth question is obviously, "no." As the above quoted portion of Judge Beard's OPINION makes clear, however, the record contains overwhelming evidence of appellant's "intent" to transfer funds "for the principal purpose of reducing the funds available for equitable distribution." *Jeffcoat v. Jeffcoat,* 102 Md.App. 301, 311, 649 A.2d 1137 (1994).

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**